**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| DONNA LAFOLLETTE, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:17-CV-321-PRC |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Deputy Commissioner for Operations, | ) | |
| Social Security Administration, | ) | |
|     Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Donna Lafollette on July 27, 2017, and a Plaintiff's Opening Brief [DE 17], filed on January 11, 2018. Plaintiff requests that the April 14, 2016 decision of the Administrative Law Judge denying her claim for disability insurance benefits and supplemental security income be reversed and remanded for further proceedings. On February 22, 2018, the Commissioner filed a response, and Plaintiff filed a reply on March 7, 2018. For the following reasons, the Court grants Plaintiff's request for remand.

**PROCEDURAL BACKGROUND**

On March 14, 2013, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging disability beginning April 5, 2013. The applications were denied initially and on reconsideration. Administrative Law Judge Daniel Balutis ("ALJ") held a hearing. In attendance at the hearing were Plaintiff, Plaintiff's attorney, and an impartial vocational expert. On April 14, 2016, the ALJ issued a written decision denying benefits, making the following findings:

    1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2. The claimant has not engaged in substantial gainful activity since April 5, 2013, the alleged onset date.

3. The claimant has the following severe impairments: cervical spine degenerative disc disease (DDD), status post cervical fusion; coronary artery disease; chronic pain disorder; generalized anxiety disorder and depressive disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant is able to lift up to 20 pounds occasionally and up to 10 pounds frequently, stand and/or walk for up to 6 hours in an 8-hour workday and sit up to 6 hours in an 8-hour workday. She would require to alternate positions every 30 minutes for 5 minutes and she is able to push and pull as much as she can lift and carry. She is never to climb ladders, ropes or scaffolds, but is able to occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant is further limited to frequent exposure to unprotected heights and moving mechanical parts. Mentally, the claimant would be able to understand, remember and carry out simple and routine tasks and that[sic] any time off task would be accommodated by her normal breaks.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born [in 1962] and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.

8. The claimant has a limited education and is able to communicate in English.

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 5, 2013, through the date of this decision.

(AR 12-22).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an

ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as

4

an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If no, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if no, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's residual functional capacity (RFC). The RFC "is an administrative assessment of what work-related activities an individual can perform despite [her] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 885-86; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

In this appeal, Plaintiff seeks remand of the ALJ's decision, arguing that the ALJ erred in determining Plaintiff's mental residual functional capacity, in weighing the medical source statement of Plaintiff's treating physician, and in assessing Plaintiff's subjective complaints. The Court considers each argument in turn.

### A. Mental Impairments

The residual functional capacity ("RFC") is a measure of what an individual can do despite the limitations imposed by her impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996); *Clifford*, 227 F.3d at 870.

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p at *1.

"The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*. The "ALJ must also consider the combined effects of all the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

In this case, the ALJ assigned Plaintiff a mental residual functional capacity for the "ability to understand, remember and carry out simple and routine tasks and that any time off task would be accommodated by her normal breaks." (AR 17). Plaintiff argues that the ALJ failed to include moderate limitations in concentration, persistence, and pace in the hypothetical posed to the ALJ and by failing to include a limitation in the RFC to superficial contact with supervisors and coworkers. The Court first summarizes the ALJ's mental RFC assessment and then considers each of Plaintiff's arguments in turn.

1.  *The ALJ's Mental RFC Assessment*

In this case, the ALJ concluded at step three of the sequential analysis that Plaintiff has moderate difficulties in concentration, persistence, and pace. (AR 16). The ALJ noted that the state agency consultants had made the same finding and reasoned that Plaintiff has moderate problems in concentration, persistence, and pace due to her diagnosis of generalized anxiety disorder and

7

depression. *Id*. The ALJ then found that the record "contains no evidence that the claimant's concentration skills do not allow for the completion of "simple, routine tasks." *Id*. The ALJ recited Plaintiff's hearing testimony that she was able to understand and follow the hearing proceedings and all lines of questioning and Plaintiff's adult function report in which she reported that she is able to pay attention based on the conversation she is having, that she does not finish what she starts, that she has trouble following instructions with them being repeated, that she has difficulties handling stress, and that she does not like change in her routine. *Id*. The ALJ noted that the psychological consultative examiner, Dr. Stage, observed that Plaintiff had some troubles with her recent and remote memory, difficulty with her serial tests, and that she had mild difficulties with inattention and distractibility secondary to her emotional distress. (AR 16) (citing Ex. 4F, p. 2). The ALJ then concluded, in the step three analysis, that "[b]y virtue of Plaintiff's ability to perform such a wide range of responsibilities, she has demonstrated the ability, at least, to successfully perform simple, routine tasks. Therefore, with regard to concentration, persistence or pace, the claimant has moderate difficulties." *Id*.

Because the ALJ did not find Plaintiff to be disabled at step three, the ALJ recognized that Plaintiff's mental impairments would again need to be assessed in the context of determining Plaintiff's mental residual functional capacity, which "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments." (AR 16-17). In the mental RFC determination, the ALJ again recognized Plaintiff's history of depression and anxiety that predates her alleged onset date and then considered the record evidence regarding these impairments. (AR 20). The ALJ noted that Plaintiff did not seek treatment from a mental health provider and that her

8

primary care physician, Dr. Prendergast provided treatment. *Id*. The ALJ commented that Dr. Prendergast observed throughout her treatment notes that Plaintiff's behavior and appearance were normal, her mood and affect were generally stable and appropriate, she was alert and cooperative, and that she was in no distress but that Dr. Prendergast occasionally added that Plaintiff was tearful during some of the examinations. (AR 20) (citing Ex. 3F, 6F, and 9F).

The ALJ then noted Dr. Stage's consultative examination findings that Plaintiff's grooming was appropriate, Plaintiff was cooperative, and Plaintiff's fund of information was adequate but also that her speech was mildly pressured, her affect was flat, and her behavior suggested only mild difficulties with inattention and distractibility. (AR 20) (citing Ex. 4F, p. 2). The ALJ noted Dr. Stage's observation that Plaintiff appeared to be experiencing longstanding feelings of anxiety and depression, which Plaintiff attributed to her health problems and occupational difficulties. *Id*. The ALJ noted that Dr. Stage's conclusion was consistent with the GAF score Dr. Stage assigned to Plaintiff, which was in the moderate range for psychological symptoms. The ALJ gave considerable weight to Dr. Stage's opinion, finding it consistent with Dr. Stage's clinical observations and generally consistent with Dr. Prendergast's treatment notes. *Id*.

Next, the ALJ considered the July 2014 treatment record from Dr. Prendergast, which the ALJ noted reported Plaintiff's affect as normal with good range and that Plaintiff felt her anxiety was well controlled with her current medication regimen. (AR 20) (citing Ex. 6F, p. 38). The ALJ recognized that the next month, Dr. Prendergast described Plaintiff as having a flat affect and being tearful but that Dr. Prendergast commented that it was due to Plaintiff's physical pain. *Id*. (citing Ex. 6F, p. 33). The ALJ then concluded that, based on these observations and on Plaintiff's "conservative level of treatment, in addition to her lack of seeking any professional mental health

9

treatment," the record supports the psychological limitations in the RFC, which are that Plaintiff can understand, remember, and carry out "simple and routine tasks" and that "any time off task would be accommodated by normal breaks." (AR 17, 20).

Last, the ALJ considered the opinion evidence regarding Plaintiff's mental impairments. The ALJ noted that Dr. Stage did not offer an RFC assessment. However, the ALJ noted that the state agency reviewers opined that Plaintiff can understand, remember, and carry out "semi-skilled tasks," that she can relate on an ongoing superficial basis with coworkers and supervisors, that she can attend to tasks for sufficient periods to complete the tasks, and that she is able to manage the stresses involved with the work. (AR 20) (citing Ex. 1A, pp. 8-10; 2A, pp. 8-10; 5A, pp. 8-10; 6A; pp. 8-10). The ALJ gave these opinions "great weight" as consistent with Plaintiff's former employer's statement that Plaintiff gets along with others, was able to concentrate, finish tasks, handle changes, and accept instruction. *Id*. (citing Ex. 7E, p. 3, 4). The ALJ found the opinions consistent with Dr. Stage's and Dr. Prendergast's observations. *Id*.

2.   *Plaintiff's Argument*

   a.   Moderate limitations in concentration, persistence, and pace

First, Plaintiff argues that the ALJ erred by not including Plaintiff's moderate difficulties in concentration, persistence, and pace in the hypothetical question proposed to the vocational expert. As noted above, the ALJ assessed Plaintiff with a mental RFC for the "ability to understand, remember, and carry out simple and routine tasks and that any time off task would be accommodated by her normal breaks." (AR 17). And, the single hypothetical posed by the ALJ to the vocational expert included a limitation "to perform simple, routine tasks, and time off-task can be accommodated by normal breaks." (AR 73). The language in the hypothetical to the vocational

expert mirrored exactly the language of the mental RFC. Thus, the question before the Court is whether the limitation imposed by the ALJ "to perform simple, routine tasks" along with the explanation that "any time off task can be accommodated by normal breaks" accommodates Plaintiff's moderate limitations in concentration, persistence, and pace.

In *O'Connor-Spinner*, the Seventh Circuit Court of Appeals held that terms like "'simple, repetitive tasks' *on their own* will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." 627 F.3d at 620 (emphasis added). This is because the ability to learn how to do a task of a certain complexity is not the same as the ability to do the given task over a sustained period of time. *Id.* at 620. Although no "specific terminology" is required, the hypothetical question posed to the vocational expert must account in substance for the specific limitations of the claimant. *Id.* at 619 (noting that courts have upheld a hypothetical when "it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform"); *see also Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *Yurt v. Colvin*, 758 F.3d 850, 856, 858-59 (7th Cir. 2014); *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009); *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008).

In this case, both the RFC and the hypothetical not only included a limitation to "simple, routine tasks" but also found that Plaintiff's time off task can be accommodated by normal breaks. The ALJ crafted this mental RFC based on a thorough analysis of the medical and opinion evidence and Plaintiff's testimony, as set out above. In her brief, Plaintiff ignores the ALJ's finding that Plaintiff's time off task can be accommodated by normal breaks, focusing solely on the language "simple, routine tasks." Moreover, Plaintiff does not address the evidence of record relied on by the

ALJ to make that finding. In fact, Plaintiff does not discuss any record evidence in the context of objecting to the ALJ's mental RFC analysis. Because the ALJ explained the basis for Plaintiff's mental RFC, which is supported by the substantial evidence of record, and because Plaintiff has not questioned the evidence or the ALJ's analysis of the evidence, remand is not required on the issue of Plaintiff's moderate limitations in concentration, persistence, or pace.

b. Superficial interaction with supervisors and coworkers

However, Plaintiff also argues that the ALJ erred by failing to account for Plaintiff's limitation to relating on a superficial basis with coworkers and supervisors. The ALJ gave "great weight" to the opinion of the state agency doctors that Plaintiff could relate on a "superficial basis" with coworkers and supervisors, and the ALJ found it consistent with Plaintiff's former employer's statement that Plaintiff gets along with coworkers. (AR 20). Yet, the ALJ did not discuss this limitation or account for it in the mental RFC. The ALJ also did not include "relating on a superficial basis" with coworkers and supervisors in the hypothetical to the vocational expert and did not ask the vocational expert if the jobs identified required more than superficial interaction. Nor did the ALJ explain why he did not include the limitation despite giving the opinions great weight. Notably, although the Commissioner's brief recognizes that the state agency doctor opined that Plaintiff can relate on a superficial basis with coworkers and supervisors, (ECF 18, p. 4) (quoting AR 87-89), the Commissioner does not address Plaintiff's argument that the ALJ failed to accommodate this limitation in the RFC. Thus, the Commissioner does not defend the omission or argue that the omission was harmless error.

In *Mack v. Berryhill*, the state agency psychologist, to whose opinion the ALJ gave great weight, opined that the plaintiff's ability to "cope with co-workers and supervisors would be

adequate for brief, superficial contact." No. 16 CV 11578, 2018 WL 3533270, at *3 (N.D. Ill. July 23, 2018). The ALJ in *Mack* did not adopt this limitation and did not explain why he did not do so. *Id*. Rather, the ALJ limited the plaintiff to interactions up to one third of the day with coworkers and "to accept instruction and respond appropriately, to criticism from supervisors." *Id*. The court in *Mack* commented that it appeared that the ALJ created this limitation "untethered to the opinion evidence in the record" without explanation, which required remand. *Id*.

In the instant case, the ALJ failed to build an accurate and logical bridge between his analysis of the evidence and the mental RFC because, despite giving great weight to the state agency doctors' opinions, the ALJ did not address Plaintiff's ability to relate on a superficial basis with coworkers and supervisors either in formulating the mental RFC or in the hypothetical posed to the vocational expert. Remand is required on this basis. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (holding that the ALJ must build a "logical bridge from the evidence to his conclusion"); *Mack*, 2018 WL 3533270, at *3.

### B. Treating Physician

Plaintiff argues that the ALJ erred by giving little weight to the medical source statement of Plaintiff's treating physician, Dr. Prendergast. In the October 19, 2015 medical source statement, Dr. Prendergast opined that Plaintiff is able to lift less than ten pounds on a repetitive basis; can stand and/or walk thirty minutes at one time; is limited to standing and/or walking up to two hours in an eight-hour workday; is limited to sitting up to four hours in an eight-hour workday; is limited in pushing and pulling; can never climb ladders, ropes or scaffolds; cannot crouch, crawl, and stoop; can occasionally climb ramps and stairs and kneel; limited to an occasional basis for reaching in all directions and with handling and fingering. (AR 426-31). Dr. Prendergast wrote that the limitations

13

are based on severe cervical disc disease, noting the November 21, 2006 surgery at C5-6 and C6-7, and neuropathic pain due to degenerative disc disease and failed surgery. (AR 429, 430).

In his decision, the ALJ gave Dr. Prendergast's opinion little weight, describing it as "overly restrictive," on the basis that the examination records, which the ALJ noted were discussed "above," are inconsistent with such a limiting opinion. (AR 19). On remand, the ALJ is directed to specify, in the context of weighing Dr. Prendergast's opinion, which examination records are inconsistent with which portions of Dr. Prendergast's opinion. The ALJ also reasoned that Plaintiff's ability to work full-time after her onset date "is further proof that Plaintiff is not as limited as Dr. Prendergast opines, and thus, would be capable of sitting, standing, and/or walking a total of 8-hours in an 8-hour workday." (AR 19). On remand, if the ALJ again relies on Plaintiff's attempt to work in the first quarter of 2014 as a reason to discount Dr. Prendergast's opinion, the ALJ is directed to discuss the circumstances of those work attempts, the fact that Plaintiff left both jobs due to neck pain, and whether they were failed work attempts. *See* (AR 36-37); *see also Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016); *Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016) ("Persisting in looking for employment even while claiming to suffer from a painful disability might simply indicate a strong work ethic or overly-optimistic outlook rather than an exaggerated condition."); *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015).

### C. Subjective Complaints

Finally, Plaintiff argues that the ALJ made several errors in assessing her subjective complaints. In making a disability determination, the ALJ must consider a claimant's statements about her symptoms, such as pain, and how the symptoms affect her daily life and ability to work. *See* 20 C.F.R. §§ 404.1529(a), 416.1529(a); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).

14

Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id*. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3), 416.1529(c)(3); *see also* SSR 16-3p, 2017 WL 5180304, at * 3. The "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2.

On remand, in considering Plaintiff's subjective complaints, the ALJ is directed to consider: Plaintiff's testimony that, although she performs some activities of daily living without modification or assistance, she needs to take breaks and gets significant help from her teenage daughters and sister, (AR 58-60); that when she goes to church she has trouble sitting for an hour and that the pain interferes with her ability to follow the sermon, (AR 18, 61-62); the chronic nature of Plaintiff's pain and the pain ratings she gave of seven on a scale of one to ten on the best day and ten out of ten on the worst day, (AR 432); Plaintiff's desire and attempt to wean herself off narcotic medication and her ultimate treatment with a pain management specialist should the ALJ again draw a negative inference from Dr. Prendergast's refusal to prescribe Plaintiff narcotic medication, (AR 373, 397, 406); Plaintiff's inability to afford physical therapy, injections, and a second opinion by a neurosurgeon, all of which were recommended, (AR 358, 382, 406, 432); and Plaintiff's need to change positions or lie down to relieve her pain.

**CONCLUSION**

Based on the foregoing, the Court hereby **GRANTS** Plaintiff's Opening Brief [DE 17], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order.

So ORDERED this 10th day of August, 2018.

s/ Paul R. Cherry  
MAGISTRATE JUDGE PAUL R. CHERRY  
UNITED STATES DISTRICT COURT